AO 91 (Rev. 11/11)   Criminal Complaint

LODGED
CLERK, U.S. DISTRICT COURT
5/30/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___MMC___ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
CLERK, U.S. DISTRICT COURT
5/30/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___VV___ DEPUTY

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Zachary DRY | ) | Case No.   2:24-MJ-03186 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of     May 29, 2024     in the county of     Los Angeles     in the
   Central   District of     California   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(1) | Felon in Possession of Firearms and Ammunition |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

/s/ Ani Ghaltakhchyan
*Complainant's signature*

Ani Ghaltakhchyan, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:     05/30/2024

*Judge's signature*

City and state:     Los Angeles, CA

Margo A. Rocconi, United States Magistrate Judge
*Printed name and title*

*AUSA:* William Larsen (x0298)

**AFFIDAVIT**

I, Ani Ghaltakhchyan, being duly sworn, declare and state as follows:

## I.  PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint and arrest warrant against defendant ZACHARY DRY ("DRY") for violation of 18 U.S.C. § 922(g)(1) (Felon in Possession of Firearms and Ammunition).

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

5.   I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since June of 2021. I am currently assigned to the Glendale Field Office of the Los Angeles Field Division of ATF, which conducts investigations into violations of federal firearms, explosives, and narcotics laws. My experience as an ATF SA includes, but is not limited to, conducting physical surveillance, executing search and arrest warrants, and

participating in controlled drug/gun purchases using informants. I have experience investigating violations of federal statutes governing firearms and narcotics. I have also conducted surveillance of individuals trafficking firearms and illegal controlled substances, and persons possessing illegal firearms.

6.    As part of my training, I attended the Criminal Investigator and Special Agent Basic Training Academies for ATF at the Federal Law Enforcement Training Center in Glynco, Georgia for approximately 27 weeks. This training included instruction on federal and state firearms and narcotics laws and regulations.

7.    I graduated Magna Cum Laude with a Bachelor's degree in Criminal Justice and Law in Society from California State University, Los Angeles. During my education, I completed a two-year internship with the United States Marshals Service("USMS") in Los Angeles, CA. During that two-year period, I spent six months at the USMS Fugitive Apprehension Task Force where I was trained to use databases such as the National Crime Information Center, to gather background information on the subjects of investigations.

8.    I also received Master of Science in Criminology with a concentration in Global Criminology from San Jose State University.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

9.    This complaint arises from a conspiracy to sell firearms in which three defendants are already facing charges. From August 11, 2023, to May 16, 2024, across multiple audio-

and video-recorded controlled transactions, Mark PEREZ, Ivan QUINTOS, and Salvador LOPEZ collectively sold ATF Undercover Agents ("UCs") and an ATF Confidential Informant ("CI")[1] approximately 50 firearms and associated ammunition.  On May 29, 2024, in Case No. 2:24-mj-3151, Magistrate Judge Margo A. Rocconi issued search warrants and a criminal complaint charging PEREZ and QUINTOS with violations of 18 U.S.C. § 922(o)(1) (Possession of a Machinegun), and charging LOPEZ with a violation of 18 U.S.C. § 922(q)(2) (Possession of Firearm Within School Zone).  A copy of the affidavit supporting that criminal complaint, which is the same for each of PEREZ, QUINTOS, and LOPEZ, is attached as Exhibit A and incorporated by reference.

10.  DRY participated and sold firearms in three of the controlled transactions between PEREZ and ATF UCs.  Most recently, on May 29, 2024, DRY and PEREZ travelled from Henderson, Nevada to Los Angeles County, within the Central District of California, to sell firearms to UCs.  At the audio- and video-recorded controlled transaction, DRY made statements confirming his possession of a Smith & Wesson pistol.  And when officers arrested DRY at the conclusion of the controlled buy, DRY was in possession of another handgun tucked into his waistband, a Springfield Armory pistol.  DRY is a prohibited person, having sustained two felony convictions for Assault with

---

[1]    The CI has worked for ATF since 2011. He/she has felony convictions for RICO in 2010 and possession of a controlled substance in 1996 and 1997. ATF agents met the CI when he/she sustained the RICO conviction for which he/she received 23 months' imprisonment. He/she works as a CI for compensation, and ATF has paid him/her approximately $397,400 over 12 years.

3

a Deadly Weapon and Battery with Use of a Deadly Weapon in 2023 in Nevada.

11. Based on the information available to me, I submit that probable cause exists to believe that DRY violated 18 U.S.C. § 922(g)(1) when he possessed two firearms on May 29, 2024.

### IV. STATEMENT OF PROBABLE CAUSE

**A. DRY participates in a multidefendant gun trafficking conspiracy.**

12. Based on my review of communications between the UCs and QUINTOS, PEREZ, and LOPEZ, reports prepared by myself and other ATF agents, my review of audio- and video-recordings of the controlled transactions, and my own knowledge of this investigation, and as set forth in the attached criminal complaint against PEREZ, QUINTOS, and LOPEZ, I know the following:

a. In June 2023, Baldwin Park Police Department gang unit officers told ATF agents about an Instagram account, "settripda_gunner" ("settrip"), whose operator was later identified as QUINTOS. QUINTOS sold ATF UCs firearms across multiple controlled transactions in Los Angeles County starting in July 2023 and, with PEREZ and LOPEZ, ultimately continuing through to May 15, 2024.

b. On January 17, 2024, QUINTOS introduced UCs to PEREZ during a controlled transaction in Los Angeles County. PEREZ provided UCs with his phone number, and on February 8,

4

2024, PEREZ offered to sell UCs more firearms.  PEREZ and UCs agreed to meet on February 28, 2024, in Las Vegas, Nevada.

c.  Agents surveilled PEREZ as he prepared for the February 28 controlled transaction.  In particular, at approximately 2:18 p.m. that day, surveillance agents saw PEREZ and an individual later identified as DRY walk across the parking lot at the agreed-upon buy location in Las Vegas.  Three to four minutes later, PEREZ and DRY walked across the parking lot toward UCs.  After greeting UCs, PEREZ and DRY entered an apartment and obtained a long case.  DRY then walked toward a silver SUV and retrieved a long object wrapped in a heavy blue fabric.  PEREZ and DRY returned to the UC vehicle.

d.  On that day, February 28, 2024, in an audio- and video-recorded controlled transaction, PEREZ and DRY sold the UCs seven firearms and associated ammunition for a total of $9,200, namely: a Norinco SKS, .762-caliber rifle, bearing serial number 1705580; FSAAP LLC FR-16, unknown caliber rifle, bearing serial number A03206; a Palmetto State Armory PA-15, multi caliber rifle, bearing serial number SCB504282; a Mossberg Model 590, 12-gauge shotgun, bearing serial number V1701130; a Mossberg Model 590, 12-gauge shotgun, bearing serial number V1589136; a Glock 29GEN4, 10mm pistol, bearing serial number BTHW888; and Llama MAX I, .45-caliber pistol, bearing serial number 07-04-09963-96.

e.  During the February 28, 2024, controlled transaction, DRY identified the "SK" rifle (which I believe to be a reference to the Norinco SKS .762-caliber rifle bearing

5

serial number 1705580) as his.  The UCs separately paid DRY $1,900 for the SK rifle, and paid PEREZ $7,300 for the remaining guns.

f.   Later, on March 11, 2024, PEREZ offered UCs more firearms for sale.  UCs agreed to purchase them, and made arrangements to meet with PEREZ in Los Angeles.

g.   On March 26, 2024, PEREZ and an unidentified woman met the UCs at a buy location in the Los Angeles area. After unloading the guns from the trunk of the Dodge Challenger that PEREZ arrived in, PEREZ explained that one rifle had a "custom 20 inch barrel on it so it can go through vests."  After UCs noticed that the rifle's serial number was obliterated, PEREZ said, "yeah, the homie did that."  UCs asked where the other individual from the February 28, 2024, transaction (referring to DRY) was, and PEREZ indicated that the gun with the obliterated serial number had belonged to DRY, who, according to PEREZ, had decided not to come to California to participate in the transaction because he was on probation.

**B.   During the May 29, 2024 controlled transaction, DRY possessed at least two firearms and ammunition.**

13.   Based on my review of communications between the UCs and QUINTOS, PEREZ, and LOPEZ, reports prepared by myself and other ATF agents, my review of audio- and video-recordings of the controlled transactions, and my own knowledge of this investigation, I know the following:

a.   On May 23, 2024, via text message, PEREZ reinitiated contact with UCs.  On Saturday, May 25, 2024, PEREZ

6

offered to sell the UCs multiple firearms -- including a Smith & Wesson pistol -- for a total of $10,750.  UCs and PEREZ agreed to meet on around noon on May 29, 2024, in Los Angeles.

b.    On that day, at around 6:30 a.m., ATF surveillance agents in Henderson, Nevada observed PEREZ's white Dodge Challenger car located at one of DRY's known residences in Henderson.  PEREZ left his car at DRY's residence, and around 8:06 a.m., agents observed PEREZ, DRY, and two unidentified women leave Henderson in a silver Ford SUV with one of the women driving.

c.    At around 1:00 p.m., DRY, PEREZ, and the two women arrived at the buy location in the Los Angeles area, within the Central District of California.  PEREZ exited the front passenger seat and DRY got out of the rear passenger seat. PEREZ and DRY obtained a Pelican gun case from the SUV's trunk. PEREZ, DRY, and the two women entered the buy location.

d.    During the controlled transaction, UCs asked DRY whether any of the firearms were his.  Answering yes, DRY confirmed that the Smith & Wesson handgun was his.

e.    UCs asked how much they owed to each of PEREZ and DRY, who indicated that UCs should pay $10,000 to PEREZ (for other firearms) and $750 to DRY for the Smith & Wesson handgun. Ultimately, UCs agreed to pay (UCs did not pay DRY and PEREZ for the firearms, because the arrest took place before any money was exchange) $10,750 for the following firearms, namely, (1) a Ruger .22 caliber pistol bearing serial number 14-73348; (2) a Springfield Armory 9 mm pistol bearing serial number US935432;

7

(3) a Springfield Armory 9 mm pistol bearing serial number S4915100; (4) a Smith & Wesson 9mm pistol bearing serial number PAV7307; (5) a CZ 9mm pistol bearing serial number G423064; (6) a Glock 9mm pistol bearing serial number CASZ477; (7) a Sig Sauer 9mm pistol, bearing serial number 24B141316; (8) a Springfield Armory model XDM Elite, .45-caliber pistol bearing serial number BB215870; (9) a Smith & Wesson 5.56 rifle bearing serial number TU61738; (10) a Romania/Cugir 7.62 caliber rifle bearing serial number A1-64946-18; and (11) a Highpoint .45 caliber rifle bearing serial number R103153

f.    After the controlled transaction, law enforcement arrested PEREZ and DRY.  Officers asked whether any of PEREZ, DRY, or the two women had other guns on them.  DRY raised his hand and said, "I do."  Officers searched DRY incident to arrest and removed a Springfield Armory pistol from DRY's waistband and determined that the firearm had ten rounds of Winchester .45-caliber ammunition inside.

14.  In sum, DRY brought to the meeting with the UCs the following firearms and ammunition: (1) a Smith & Wesson 9mm pistol, bearing serial number PAV7307 (the firearm DRY presented for sale at the controlled transaction); (2) a Springfield Armory model XDM Elite, .45-caliber pistol bearing serial number BB215870; and (3) ten rounds of .45-caliber ammunition manufactured by Winchester.

**C.    DRY has two felony convictions for crimes of violence.**

15.  On May 30, 2024, I reviewed certified conviction records and learned that DRY has previously been convicted of

the following felony crimes punishable by a term of imprisonment exceeding one year:

a.    On May 4, 2023, in Case No. C-19-345387-1, DRY was convicted of Battery with Use of a Deadly Weapon, in violation of Nevada Revised Statutes § 200.481; and

b.    On April 12, 2023, in Case No. C-20-349171-1, DRY was convicted of Assault with a Deadly Weapon, in violation of Nevada Revised Statutes § 200.471.[2]

### D.    The firearms and ammunition that DRY possessed travelled in interstate commerce.

16.    Based on a conversation with ATF Special Agent Tiffany Lamphere, I know that SA Lamphere, who is an ATF Firearms and Ammunition Interstate Nexus Expert, examined the Springfield Armory model XDM Elite, .45-caliber pistol bearing serial number BB215870 that was recovered from DRY's waistband.  SA Lamphere determined that the Springfield Armory pistol was manufactured by HS Produkt in Croatia, so must have moved in foreign commerce in order to be recovered in California.

17.    SA Lamphere also examined ten rounds of .45-caliber ammunition manufactured by Winchester that were recovered with the Springfield Armory pistol.  SA Lamphere determined that the ammunition was manufactured by Winchester in either Illinois or

---

[2] From my conversations with an Assistant United States Attorney, I am aware that both of DRY's convictions are crimes of violence.  See United States v. Guizard-Rodriguez, 900 F.3d 1044, 1048 (9th Cir. 2018) (Nevada battery with deadly weapon is a crime of violence); United States v. Edling, 895 F.3d 1153, 1156 (9th Cir. 2018) (Nevada assault with deadly weapon is a crime of violence).

Mississippi, so must have traveled in interstate commerce to be recovered in California.

18.  In addition, since DRY and PEREZ personally drove from Henderson to Los Angeles with the firearms that DRY possessed on May 29, 2024 (as observed by law enforcement surveillance agents), the firearms travelled in interstate commerce.

## V.  CONCLUSION

19.  For all of the reasons described above, there is probable cause to believe that DRY violated 18 U.S.C. § 922(g)(1) (Being a Felon in Possession of Firearms and Ammunition).


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on ~~this~~ __30__ day of May,
2024.

_____
HONORABLE Margo A. Rocconi
UNITED STATES MAGISTRATE JUDGE